UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AUDREY BERNSTEIN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TD AMERITRADE HOLDING CORPORATION, JOSEPH H. MOGLIA, STEVE BOYLE, LORENZO A. BETTINO, V. ANN HAILEY, BRIAN M. LEVITT, KAREN E. MAIDMENT, BHARAT B. MASRANI, IRENE R. MILLER, MARK L. MITCHELL, WILBUR J. PREZZANO, TODD M. RICKETTS, ALLAN R. TESSLER, and CHARLES SCHWAB CORPORATION,<br><br>Defendants. | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14 (a) AND 20 (a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Audrey Bernstein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against TD Ameritrade Holding Corporation ("TD Ameritrade" or the "Company") and the members TD Ameritrade's board of directors (the "Board" or the "Individual Defendants") and The Charles Schwab Corporation and its affiliates ("Schwab"), collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between TD Ameritrade and Schwab.

2.     Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Joint Proxy/Prospectus on Form S-4 (the "Registration Statement") to be filed on March 10, 2020 with the United States Securities and Exchange Commission ("SEC") in anticipation of disseminating it to Company stockholders. The Registration Statement recommends that the Company's stockholders vote in favor of a proposed transaction in which Americano Acquisition Corp., an affiliate of Schwab, will merge with and into TD Ameritrade, with TD Ameritrade surviving as a wholly-owned subsidiary of Schwab (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each TD Ameritrade stockholder will receive 1.0837 Schwab shares for each share of TD Ameritrade shares that they hold on the record date (the "Merger Consideration").

3.     As discussed below, Defendants have asked TD Ameritrade's stockholders to vote for the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the Company's and Schwab's financial projections and the analyses performed by the Company's financial advisors, PJT Partners, LP ("PJT") and Piper Sandler & Co. ("Piper Sandler" and together with PJT, the "Financial Advisors"), in support of their fairness opinion.  It further contains a materially misleading and incomplete discussion and disclosure of the fee and financial interests of TD Ameritrade's investment advisors, PJT Partners, LP ("PJT") and Piper Sandler & Co. ("Piper Sandler").

4.     It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to TD Ameritrade's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District and Plaintiff resides in this District

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of TD Ameritrade common shares.

10. Individual Defendant Joseph H. Moglia has served as a member of the Board since 2006 and is the Chairman of the Board.

11. Individual Defendant Steve Boyle has served as a member of the Board since 2019 and is also the Company's Interim President and Chief Executive Officer.

12. Individual Defendant Lorenzo A. Bettino has served as a member of the Board since 2014. Individual Defendant V. Ann Hailey has served as a member of the Board since

6

2016.

13. Individual Defendant Brian M. Levitt has served as a member of the Board since 2016.

14. Individual Defendant Karen E. Maidment has served as a member of the Board since 2010.

15. Individual Defendant Bharat B. Masrani has served as a member of the Board since 2013.

16. Individual Defendant Irene R. Miller has served as a member of the Board since 2015.

17. Individual Defendant Mark L. Mitchell has served as a member of the Board since 1996.

18. Individual Defendant Wilbur J. Prezzano has served as a member of the Board since 2006.

19. Individual Defendant Todd M. Ricketts has served as a member of the Board since 2011.

20. Individual Defendant Allan R. Tessler has served as a member of the Board since 2006

21. The defendants identified in paragraphs 10-20 are collectively referred to as the "Individual Defendants" or the "Board."

22. Defendant TD Ameritrade a Delaware corporation and maintains its principal offices at 200 South, 108th Avenue, Omaha, Nebraska 68154. The Company's stock trades on the NASDAQ Stock Exchange under the symbol "AMTD."

23. Defendant Schwab is a Delaware corporation that maintains its principal place of business at 21 Main Street, San Francisco, California 94105, and trades on the NYSE under the

6

symbol "SCHW".

24. The defendants identified in paragraphs 10-23 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

25. TD Ameritrade provides securities brokerage and related technology-based financial services to retail investors and traders, and independent registered investment advisors (RIAs) in the United States. The Company offers trade execution, clearing, and margin lending services; and futures and foreign exchange trade execution services. It offers retail brokerage services for common and preferred stocks; exchange-traded funds (ETFs); mutual funds; options; futures; foreign exchange; fixed income products; primary and secondary offerings of fixed income securities, closed-end funds, common and preferred stocks; margin lending; cash management services; and annuities. The Company also offers investor education services for investors to teach how to approach the selection process for investment securities and manage their investment portfolios. TD Ameritrade provides its services primarily through the Internet, a network of retail branches, mobile trading applications, interactive voice response, and registered representatives through telephone. The Company was founded in 1971 and is headquartered in Omaha, Nebraska.

26. On November 26, 2019, the Company and Schwab jointly announced the Proposed Transaction:

> SAN FRANCISCO & OMAHA, Neb.--(BUSINESS WIRE)--The Charles Schwab Corporation ("Schwab") and TD Ameritrade Holding Corporation ("TD Ameritrade") today announced that they have entered into a definitive agreement for Schwab to acquire TD Ameritrade in an all-stock transaction valued at approximately $26 billion. Under the agreement, TD Ameritrade stockholders will receive 1.0837 Schwab shares for each TD Ameritrade share, which represents a 17% premium over the 30-day volume weighted average price exchange ratio as of November 20, 2019.

Schwab President and CEO Walt Bettinger said, "We have long respected TD Ameritrade since our early days pioneering the discount brokerage industry, and as a fellow advocate for investors and independent investment advisors. Together, we share a passion for breaking down barriers for investors and advisors through a combination of low cost, great service and technology. With this transaction, we will capitalize on the unique opportunity to build a firm with the soul of a challenger and the resources of a large financial services institution that will be uniquely positioned to serve the investment, trading and wealth management needs of investors across every phase of their financial journeys."

The combination brings together two leading firms with proud and similar histories of making investing more accessible to all. More than 40 years ago, Schwab and TD Ameritrade started out as alternatives to traditional Wall Street brokerages. They helped lead a revolution to become the preferred model for full-service investing among tens of millions of direct investors and the go-to providers of custodial and consulting services for thousands of independent investment advisors. The firms' mutual respect and complementary cultures will help Schwab successfully integrate TD Ameritrade into its future operations.

With today's announcement, the TD Ameritrade Board of Directors has suspended its previously disclosed CEO search, naming Stephen Boyle, TD Ameritrade EVP and CFO, as the company's interim President and CEO. Mr. Boyle will assume leadership of the company effective immediately, guiding its management team through its fiscal 2020 plan and the proposed integration with Schwab.

"Partnering with Schwab on this transformative opportunity makes the right strategic and financial sense for TD Ameritrade," Mr. Boyle said. "We share a common history—a journey since 1975 that has made Wall Street more accessible and financial dreams more attainable for millions of Americans. Our associates are fiercely proud of that legacy and all that we have accomplished to make TD Ameritrade one of the premier firms in financial services. Now we look to join forces with a respected firm like Schwab that shares our relentless focus, and to do more than we could do apart. Together, we can deliver the ultimate client experience for retail investors and independent registered investment advisors. We can continue to challenge the status quo,

pooling our resources and expertise to transform lives—and investing—and deliver sustainable, long-term value to our many stakeholders."

Mr. Bettinger added, "One of Chuck Schwab's ambitions has always been to build a strong and independent Schwab that would be around to serve clients for many years in the future. We believe the combination of our two great companies positions us to be competing and winning in the investment services business for the long run—the very long run."

**Transaction Details**

This transaction creates significant strategic benefits for the combined organization and is expected to deliver attractive returns for the owners of both companies, while further improving the investing and trading experience of both Schwab and TD Ameritrade clients. It allows Schwab to continue to add further scale on top of its organic growth, helping to drive sustainable, profitable growth and long-term value creation. More specifically, the acquisition will add to Schwab approximately12 million client accounts, $1.3 trillion in client assets, and approximately $5 billion in annual revenue. This added scale is expected to result in lower operating expenses as a percentage of client assets ("EOCA"), help fund enhanced client experience capabilities, improve the company's competitive position and further its financial success and diversification of revenue. The resulting combined firm is expected to serve 24 million client accounts with more than $5 trillion in client assets; taken together, the two firms recently generated total annualized revenue and pre- tax profits of approximately $17 billion and $8 billion, respectively.

The transaction has been unanimously approved by the Boards of Directors of Schwab and TD Ameritrade, as well as the Strategic Development Committee of TD Ameritrade's Board—a committee comprised solely of outside, independent directors that was established by the Board of Directors of TD Ameritrade to oversee and conduct the process and all negotiations concerning the transaction on behalf of the Board. Post-closing, The Toronto-Dominion Bank ("TD Bank"), which currently holds approximately 43% of TD Ameritrade's common stock, will have an estimated aggregate ownership position of approximately 13% in the combined company, with other TD Ameritrade stockholders and existing Schwab stockholders holding approximately 18% and

69%, respectively. TD Bank's voting stake will be capped at 9.9%, with the balance of its position held in a new, non-voting class of Schwab common stock. Additional details regarding stockholder matters, including upcoming votes, will be provided in the subsequent merger proxy materials.

In addition, this transaction included a renegotiation of the Insured Deposit Account (IDA) agreement by Schwab and TD Bank, to be effective at closing. The agreement was extended for a 10-year term beginning in 2021, and the servicing fee paid by Schwab on balances within the IDA was reduced by 10 basis points. Over time, Schwab will have the option to reduce balances routed to the IDA sweep program, subject to certain restrictions. This arrangement provides flexibility to optimize related revenue as those balances are shifted to Schwab.

With anticipated synergies, the deal is expected to be 10-15% accretive to GAAP EPS and 15-20% accretive to Operating Cash EPS in year three, post-close. Focusing on expenses, current estimates are for approximately $1.8 to $2 billion run-rate expense synergies, which represents approximately 18-20% of the combined cost base. Some of the expense synergies the combined firm expects to realize will come from elimination of overlapping and duplicative roles. Additional synergies are expected to be achieved through real estate, administrative and other savings. Details on these synergies will be shared at a later date, once the integration process is underway.

The transaction is subject to customary closing conditions, including receipt of applicable regulatory approvals and approval by the stockholders of both companies. Closing is also subject to a "majority of the minority" TD Ameritrade stockholder approval condition, which means that the transaction must be approved by holders of a majority of the outstanding TD Ameritrade shares, other than TD Bank and certain other shareholders of TD Ameritrade that have entered into voting agreements. TD Bank and certain stockholders of TD Ameritrade (who collectively own approximately 52% of the TD Ameritrade shares), and certain stockholders associated with Charles R. Schwab (who own approximately 10% of the Schwab shares), have agreed to vote their shares in favor of the transaction. The parties expect the transaction to close in the second half of 2020, and integration efforts to begin immediately thereafter.

> Following the close of the transaction, TD Bank will have the right to name two new seats on the Schwab Board of Directors and TD Ameritrade will name a single director.
>
> Credit Suisse Securities (USA) LLC served as financial advisor and Davis Polk & Wardwell LLP acted as legal advisor to The Charles Schwab Corporation. PJT Partners LP and Sandler O'Neill + Partners LP served as financial advisors and Wachtell, Lipton, Rosen & Katz acted as legal advisor to the Strategic Development Committee of the Board of Directors of TD Ameritrade.
>
> **Integration Process, New Headquarters**
>
> The integration of the two firms is expected to take between 18 and 36 months, following the close of the transaction. Schwab has named Senior EVP and COO Joe Martinetto to oversee the integration initiative, assisted by a team of experts from both Schwab and TD Ameritrade.
>
> As part of the integration process, the corporate headquarters of the combined company will eventually relocate to Schwab's new campus in Westlake, Texas. Both companies have a sizable presence in the Dallas-Fort Worth area. This will allow the combined firm to take advantage of the central location of the new Schwab campus to serve as the hub of a network of Schwab branches and operations centers that span the entire U.S., and beyond. Any additional real estate decisions will be made over time as part of the integration process.
>
> Schwab was founded in San Francisco and has maintained a longstanding commitment to the Bay Area, which will continue. A small percentage of roles may move from San Francisco to Westlake over time, either through relocation or attrition. The vast majority of San Francisco-based roles, however, are not anticipated to be impacted by this decision. Schwab expects to continue hiring in San Francisco and retain a sizable corporate footprint in the city.

\* \* \*

27.     The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that TD Ameritrade's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether

or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Registration Statement**

28.     On March 10, 2020, TD Ameritrade and Schwab jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

29.     The Registration Statement fails to provide material information concerning financial projections by management and relied upon by the Financial Advisors in their analyses. The Registration Statement indicates that in connection with the rendering of the fairness opinion, management prepared certain non-public financial forecasts (the "Company Projections" and "Schwab Projections") and provided them to the Board and the Financial Advisors in connection with their forming a view about the stand-alone valuation of the Company. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

11

30. For the Schwab Projections for TD Ameritrade, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2019 through 2024: Adjusted EBITDA; Non-GAAP adjusted net income; Non- GAAP adjusted earnings per share; Levered free cash flows; and Unlevered free cash flows, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

31. For the TD Ameritrade Projections for TD Ameritrade (Cases 1, 2, and 3), the Registration Statement provides values for non-GAAP financial metrics for fiscal years 2019 through 2023: Adjusted net income and Levered free cash flows, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

32. For the Schwab Projections for Schwab, the Registration Statement provides values for non-GAAP financial metrics for fiscal years 2019 through 2024: Non-GAAP adjusted earnings per share and Distributable cash flows, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

33. For the Schwab Projections for the Combined Company, the Registration Statement provides values for a non-GAAP financial metric for fiscal years 2019 through 2024: Distributable cash flows, but fails to provide line items used to calculate this metric or a

reconciliation of this non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

34. When a company discloses non-GAAP financial measures in a proxy statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

35. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

36. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and Misrepresentations Concerning the Financial Advisors' Compensation and Incentives*

37. Full disclosure of investment banker compensation and potential conflicts is material under Section 14(a). Such disclosure is imperative for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts.

38. The Registration Statement fails to fully disclose either PJT's or Piper Sandler's financial interest in the Proposed Transaction.

39. With regard to the fee to be paid to PJT, the Registration Statement states:

> PJT Partners is acting as the financial advisor to the strategic development committee in connection with the merger. As compensation for its services in connection with the merger, PJT Partners is entitled to receive from TD Ameritrade (i) $10 million, which became payable upon the delivery of PJT Partner's opinion to the strategic development committee (and which became payable regardless of the conclusion reached in such opinion) and (ii) additional compensation upon the closing of the merger, the amount of which will be determined using a formula incorporating the exchange ratio and the trading price of Schwab common stock during a certain time period prior to the closing of the merger. As of February 21, 2020, this closing-related fee would have been approximately $41.9 million.

40. The Registration Statement stated with regard to the fee to be paid to Piper Sandler:

> Piper Sander is acting as the strategic development committee's financial advisor in connection with the merger and will receive a fee for such services, $5 million of which was paid by TD Ameritrade to Piper Sandler upon the signing of the merger agreement and the remainder of which is payable and contingent upon the closing of the merger. The portion of the fee payable and contingent upon the closing of the merger will be determined using a formula incorporating the exchange ratio and the trading price of Schwab common stock during a certain time period prior to closing of merger. As of February 21, 2020, this fee would have been approximately $14.0 million. Piper Sandler also received a $5 million fee from the strategic development committee upon rendering its opinion (and which became payable regardless of the conclusion reached in such opinion).

41. The discussion of the Financial Advisors' fees in the Registration Statement is

misleading and/or omits material information as it: (1) fails to disclose the formula through which the Financial Advisors' fees will be determined; (2) fails to disclose the time period to be used to determine the price of Schwab's stock, that will then be inputted into the undisclosed formula to determine the Financial Advisors' fees; and (3) fails to disclose the actual fee that will be paid to the either of the Financial Advisors.

42. The discussion of Piper Sandler's fee is particularly misleading and is unclear as to how much more Piper Sandler will be paid given that it was paid $5 million upon the signing of the merger agreement, and $5 million upon rendering its opinion.

43. The Registration Statement also fails to fully disclose Piper Sandler's potential conflicts and the extent to which it owns and/or trades the securities of Schwab and TD Bank. The Registration Statement states, "Piper Sandler may purchase securities from and sell securities to TD Ameritrade, Schwab, TD Bank and their respective affiliates. Piper Sandler may also actively trade the equity and debt securities of TD Ameritrade, Schwab, TD Bank and their respective affiliates for Piper Sandler's account and for the accounts of Piper Sandler's customers."

44. The Registration Statement, however, fails to disclose Piper Sandler's positions with respect to Schwab and TD Bank, in particular, and whether the extent of its proprietary trading in shares of those entities, is sufficient to constitute a material conflict which should have been disclosed.

45. In short, the discussion of the Financial Advisors' fees fails to provide TD Ameritrade shareholders with sufficient disclosure as to the financial interest of the Financial Advisors in the Proposed Transaction.

<u>Omissions and/or Material Misrepresentations Concerning Financial Analyses</u>

46. With respect to the Financial Advisors' *Discounted Equity Cash Flow Analysis – TD Ameritrade*, the Registration Statement fails to disclose: (i) the terminal values of TD

18

Ameritrade as of December 31, 2023; (ii) the inputs and assumptions underlying the use of the exit multiple range of 12.0x to 14.0x; (iii) the inputs and assumptions underlying the use of the implied perpetuity growth rate of 1.5%; (iv) the inputs and assumptions underlying the discount rates ranging from 8.5% to 10.5%; and (v) the number of fully-diluted outstanding shares of TD Ameritrade common stock as of November 19, 2019.

47. With respect to the Financial Advisors' *Discounted Equity Cash Flow Analysis/Net Present Value Analysis – Schwab*, the Registration Statement fails to disclose: (i) the terminal values of Schwab as of December 31, 2023; (ii) the inputs and assumptions underlying the use of the exit multiple range of 15.5x to 17.5x; (iii) the inputs and assumptions underlying the use of the implied perpetuity growth rate of 3.2%; (iv) the inputs and assumptions underlying the discount rates ranging from 8.5% to 10.5%; (v) the number of fully-diluted outstanding shares of Schwab common stock as of November 19, 2019; (vi) the inputs and assumptions underlying the use of 2023E earnings per share multiples ranging from 15.0x to 19.0x used by Piper Sander in its net present value analysis; and (vii) the inputs and assumptions underlying the discount rates ranging from 7.92% to 11.92% used by Piper Sander in its net present value analysis.

48. With respect to the Financial Advisors' *Illustrative Pro Forma Value Creation Analysis*, the Registration Statement fails to disclose the number of fully diluted shares of Schwab common stock outstanding after giving effect to the Proposed Transaction.

49. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

18

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

50. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

52. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

53. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

54. Defendants were, at the very least, negligent in preparing and reviewing the

Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

55. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

56. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

57. The Individual Defendants acted as controlling persons of TD Ameritrade within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of TD Ameritrade, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of TD Ameritrade, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and

misleading.

58. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of TD Ameritrade, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

60. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

61. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate

result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

63. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 6, 2020

_/s/ Howard T. Longman_
Howard T. Longman
New Jersey Bar #264 88 2018
**STULL STULL & BRODY**
354 Eisenhower Parkway, Suite 1800

18

        Livingston, New Jersey 07039
        T/(973) 9942315
        F/973-994 2319
        E/hlongman@ssbny.com

Of Counsel:

Lynda J. Grant
**THEGRANTLAWFIRM, PLLC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
T/212-292-4441
F/212-292-4442
E/lgrant@grantfirm.com

18